[FMH]                                                               [PUBLISH]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **AL RABIEE and WILLIAM H. WHITEHEAD,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | **CASE NO.: 2-06-CV-1395-RDP** |
| ) | |
| **ROBERT RILEY, in his official** ) | **FRANK M. HULL** |
| **capacity as Governor of the State** ) | **U.S. Circuit Judge** |
| **of Alabama, and TROY KING,** ) | **R. DAVID PROCTOR** |
| **in his official capacity as Attorney** ) | **U.S. District Judge** |
| **General of the State of Alabama,** ) | **VIRGINIA EMERSON HOPKINS** |
| ) | **U.S. District Judge** |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

HULL, Circuit Judge:

Plaintiffs Al Rabiee and William H. Whitehead, citizens of Alabama, filed this lawsuit under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, against defendant Robert Riley, in his official capacity as Governor of Alabama, and defendant Troy King, in his official capacity as Attorney General of Alabama. Section 5 of the Voting Rights Act requires certain states, such as Alabama, to obtain either judicial preclearance from the United States District Court for the District of Columbia, or administrative preclearance from the United States

Attorney General, before changing "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting . . . ." 42 U.S.C. § 1973c(a); see also White v. Alabama, 74 F.3d 1058, 1060 n.4 (11th Cir. 1996). Private citizens may bring suit to enforce Section 5, and "[a]ny action under [Section 5] shall be heard and determined by a [district] court of three judges . . . ." 42 U.S.C. § 1973c(a); see also Watson v. Comm'rs Court of Harrison County, 616 F.2d 105, 106-07 (5th Cir. 1980).

Plaintiffs' complaint concerns an Alabama statute codified at Ala. Code § 12-24-1 and -2 (the "Alabama statute").[1] The Alabama statute requires: (1) the Alabama Supreme Court to adopt rules requiring attorneys to serve on all counsel of record in a particular case certificates of disclosure stating the amount, if any, of campaign contributions made to the presiding judge (or appellate court judges) by the attorneys (including other attorneys with whom they practice), their clients, and related parties during the most recent election campaign; and (2) Alabama state court judges to disclose campaign contributions publicly and, upon filing of a written notice requiring recusal, recuse from cases if the attorneys, their clients, or the related parties contributed over a certain amount of money to the judges'

---

[1] In 1995, the Alabama legislature passed this statute, Act Number 95-648, which was signed into law by the Governor on July 31, 1995. The statute became effective on January 1, 1996.

campaigns.[2]

The Alabama Supreme Court has not adopted the rules required by the Alabama statute and has taken the position, along with the Alabama Administrative Office of the Courts ("AOC"), that the Alabama statute must be precleared under Section 5, that the defendant Attorney General has not sought the required preclearance, and that the Alabama statute is not effective and no rules are required until preclearance occurs.

---

[2] In pertinent part, the statute provides:

(a) Any justice or judge of an appellate or circuit court of [Alabama] shall file . . . a statement disclosing the names and addresses of campaign contributors and the amount of each contribution made to him or her in the election immediately preceding his or her new term in office. . . .

(b) The Supreme Court [of Alabama] shall provide . . . a rule or rules . . . as follows: . . . the attorneys for all parties shall serve certificates of disclosure on all attorneys of record . . . . Each certificate shall state the amount, if any, of campaign contributions by the respective individual donor or entity to any justice or judge of an appellate court where the case is pending, or if it is a trial court proceeding, the amount, if any, of campaign contributions by the respective individual donor or entity to the judge presiding over the case . . . .

(c) The action shall be assigned to a justice or judge regardless of the information contained in the certificates of disclosure. If the action is assigned to a justice or judge of an appellate court who has received more than four thousand dollars ($4,000) based on the information set forth in any one certificate of disclosure, or to a circuit judge who has received more than two thousand dollars ($2,000) based on the information set out in any one certificate of disclosure, then, within 14 days after all parties have filed a certificate of disclosure, any party who has filed a certificate of disclosure setting out an amount . . . below the limit applicable to the justice or judge, or an amount above the applicable limit but less than that of any opposing party, shall file a written notice requiring recusal of the justice or judge . . . .

Ala. Code § 12-24-2.

Meanwhile, defendants—who would be responsible for effectuating preclearance—take the position that preclearance is not required and that the statute is legally enforceable without preclearance. Plaintiffs' complaint seeks a declaratory judgment holding that the Alabama statute must be precleared under Section 5 and ordering defendants to seek preclearance under Section 5.

We first outline the undisputed facts and then discuss our jurisdiction to consider plaintiffs' Section 5 claim.

## I. UNDISPUTED FACTS[3]

In March 1996, Alabama Attorney General Jeff Sessions wrote a letter to the United States Department of Justice ("DOJ") submitting the Alabama statute for Section 5 preclearance. On May 13, 1996, DOJ responded, stating that in order to determine its position with regard to the Alabama statute, it needed further information from the Alabama Attorney General. DOJ requested, inter alia: (1) the rule or rules adopted by the Alabama Supreme Court pursuant to Ala. Code § 12-24-2(b); (2) a list of each campaign contribution for each successful candidate for Alabama judge or justice since 1989; and (3) a description of each instance since 1989 in which a party to litigation in the Alabama courts had sought recusal

---

[3] The parties do not contest any of the recited facts in this opinion.

4

based on a judicial campaign contribution. As noted earlier, the Alabama Supreme Court has not adopted the rules required by the Alabama statute.

On May 20, 1996, Attorney General Sessions responded by withdrawing the Alabama statute from preclearance consideration. Attorney General Sessions's May 20th letter stated that "further review" had convinced his office that preclearance of the Alabama statute was unnecessary because the statute did not "bear a direct relation to voting itself." Attorney General Sessions's letter relied on Presley v. Etowah County Comm'n, 502 U.S. 491, 510, 112 S. Ct. 820, 832 (1992).

DOJ responded on July 23, 1996, stating that it believed that the Alabama statute did require preclearance, and further stating that in its view, the Alabama statute would not be legally enforceable "unless the State of Alabama [first] receive[d] a declaratory judgment from the United States District Court from the District of Columbia or the Attorney General [of the United States] interpose[d] no objection to the voting changes . . . ."

Attorney General Sessions responded on July 30, 1996, stating: "Our analysis and research convinces us that this statute is not subject to the requirements of Section 5 of the Voting Rights Act. This continues to be our

position."

On July 18, 1997, DOJ sent a letter to the Alabama Attorney General's office rejecting again the position of the Alabama Attorney General that the Alabama statute did not require preclearance under the Voting Rights Act.

On July 23, 1997, in response to the July 18, 1997 letter from DOJ, Alabama Attorney General William H. Pryor stated that the Alabama Attorney General's office stood by its withdrawal of the submission of the Alabama statute for preclearance for the reasons given in its July 30, 1996 letter. Attorney General Pryor's letter reiterated that the Attorney General of Alabama will not be submitting this law for preclearance "because Section 5 does not apply."

On November 23, 1998, the Clerk of the Supreme Court of Alabama wrote a letter to the Alabama Judicial Inquiry Commission, stating that the Alabama Supreme Court had not adopted rules implementing the Alabama statute. According to the letter, the "official reason is that the Act has not been precleared by the Justice Department."

Between January 1999 and March 2000, and in response to inquiries, the AOC advised state court judges, Judge John H. England, Jr., Judge L. Scott Coogler, and Judge Thomas E. Head, III, that it agreed with DOJ's position that

the Alabama statute must be precleared. The AOC advised all three state court judges that in its view, the Alabama statute would not be "legally enforceable" until it was precleared.

The AOC and the Alabama Supreme Court continue to take the position that the Alabama statute must be precleared under Section 5, while defendants continue to take the position that preclearance is not necessary. To this date, the Alabama Supreme Court has not adopted the "rule or rules" required by Ala. Code. § 12-24-2(b).

Plaintiffs Whitehead and Rabiee are parties to litigation currently pending in Alabama state courts. See Whitehead v. Bradley, Arant, Rose & White, LLP, CV-2005-6143 (Circuit Court of Jefferson County, Ala.), and Slaughter v. Rabiee, CV-2005-7674 (Circuit Court of Jefferson County, Ala.). In each case, plaintiffs invoked the Alabama statute and moved to recuse the presiding Circuit Judges (the Honorable Tom King and the Honorable Robert Vance, Jr., respectively) pursuant to the Alabama statute. On August 30, 2006, Judge King entered an order staying the Whitehead case pending the outcome of this case. In his August 30 order, Judge King stated that the Alabama statute was "most likely unenforceable due to the failure to acquire a preclearance" from DOJ. On November 27, 2006, Judge Vance entered an order denying a stay in Slaughter pending the outcome of this

case. In his November 27 order, Judge Vance stated that "this Court concludes that Ala. Code § 12-24-2 is ineffectual absent rules promulgated by the Supreme Court of Alabama, as explicitly authorized by sub-section (b) of that statute."

Additionally, in each state lawsuit, plaintiffs filed petitions for a writ of mandamus with the Alabama Supreme Court. In Whitehead, along with his mandamus petition, plaintiff also sought the recusal of certain of the Alabama Supreme Court justices pursuant to the Alabama statute. Plaintiffs' recusal motion and mandamus petitions were denied. See Ex parte William H. Whitehead, No. 1050719 (Ala. May 18, 2006) (order denying application for rehearing of the petition for mandamus and motion for recusal and appointment of a special court); Ex parte Al Rabiee, No. 1050950 (Ala. May 18, 2006) (order denying petition for writ of mandamus directing Judge Vance to recuse); Ex parte William H. Whitehead, No. 1050719 (Ala. Apr. 19, 2006) (order denying motion for recusal and appointment of a special court); Ex parte William H. Whitehead, No. 1050719 (Ala. Apr. 19, 2006) (order denying petition for writ of mandamus directing Judge King to recuse).

Plaintiffs Whitehead and Rabiee filed this lawsuit on July 20, 2006. Their complaint essentially outlines the facts above, requests a three-judge court be convened to decide their claims pursuant to Section 5, and asks this court to

declare that the Alabama statute is covered by Section 5 of the Voting Rights Act and to order defendants to seek preclearance of the Alabama statute. The complaint also seeks attorneys' fees. In October 2006, this three-judge court was convened to consider the Section 5 issues raised by plaintiffs' complaint.

## II. DISCUSSION

### A. Propriety of the Three-Judge Court

We briefly explain why this three-judge court was properly convened, and briefly address the limits of our jurisdiction as a three-judge court.

Whether legislation enacted by a covered state or political subdivision is subject to preclearance under Section 5 of the Voting Rights Act must be decided by a three-judge district court. 42 U.S.C. § 1973c; Allen v. State Bd. of Elections, 393 U.S. 544, 563, 89 S. Ct. 817, 830 (1969). "The single-judge district court to whom the request for a three-judge court is made has the authority to determine if a three-judge court is required." United States v. Saint Landry Parish Sch. Bd., 601 F.2d 859, 863 (5th Cir. 1979) (citing 28 U.S.C. § 2284(b)(3)). Judge R. David Proctor, United States District Court for the Northern District of Alabama, was originally assigned to this case. Judge Proctor made the determination that a three-judge panel would be required after receiving the parties' briefing on the

issue and holding a hearing on October 23, 2006. Chief Judge J.L. Edmondson of the Eleventh Circuit designated the current panel by order dated November 21, 2006.

Again, "[a]ny action under [Section 5] shall be heard and determined by a [district] court of three judges." 42 U.S.C. § 1973c(a). While a single-judge district court may determine that three judges are not required, a single judge may do so only if the plaintiff's Section 5 claim "is wholly insubstantial or completely without merit." Saint Landry Parish Sch. Bd., 601 F.2d at 863; see also LaRouche v. Fowler, 152 F.3d 974, 982 & n.6 (D.C. Cir. 1998). Because we do not believe that the Section 5 claim raised in this case was obviously without merit or frivolous, we conclude that this three-judge court was properly convened in the first instance.[4]

Upon convening, "[t]he three-judge district court may determine only

---

[4] The fact that the case is not frivolous is also evidenced by DOJ's letter of July 23, 1996 to Attorney General Sessions and opinions of the Alabama Supreme Court, in which that Court has indicated, directly or indirectly, its view that the Alabama statute is subject to preclearance by DOJ. See Ex parte McLeod, 725 So.2d 271, 274 n.3 (Ala. 1998) (stating that "it would be futile for this Court to impose on judges a duty to disclose contributions," before DOJ precleared the Alabama statute); see also Finley v. Patterson, 705 So.2d 834, 835 n.1 (Ala. 1997) (Cook, J., concurring specially) (noting that enforcement of the Alabama statute "is in legal limbo" because the disagreement between DOJ and the Alabama Attorney General has not been resolved); Brackin v. Trimmier Law Firm, 897 So. 2d 207, 233-34 (Ala. 2004) (Brown, J., filing statement of nonrecusal) (stating that "it is questionable whether [the Alabama statute is] even enforceable," and citing Ex parte McLeod and Finley).

whether § 5 covers a contested change, whether § 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy, if any, is appropriate." Lopez v. Monterey County, 519 U.S. 9, 23, 117 S. Ct. 340, 349 (1996). "The goal of a three-judge district court facing a § 5 challenge must be to ensure that the covered jurisdiction submits [any covered] election plan to the appropriate federal authorities for preclearance as expeditiously as possible." Id.

In other words, the role of a properly convened three-judge court in this case would be to determine whether the Alabama statute is covered by Section 5 and must be submitted for preclearance in order to be legally effective. See id. It would not be the role of this court to consider whether or not the Alabama statute would ultimately be precleared, if and when it was submitted for preclearance. See City of Lockhart v. United States, 460 U.S. 125, 129 n.3, 103 S. Ct. 998, 1001 n.3 (1983).

## B. Case or Controversy

Before this three-judge court can reach the question of whether or not the Alabama statute is covered by Section 5, however, we must satisfy ourselves that there are no other limits on our jurisdiction. "'It is axiomatic that federal courts

are courts of limited jurisdiction, and as such are under a continuing duty to satisfy themselves of their jurisdiction before proceeding to the merits of any case.'" Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1275 n.22 (11th Cir. 2000) (citation omitted). More specifically, we must address defendants' argument that there is no live "case or controversy" between the parties in this particular case, as required by Article III of the Constitution.

Article III of the Constitution restricts federal courts to deciding only actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; see also Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006). Likewise, the Declaratory Judgment Act applies only in cases involving an "actual controversy." 28 U.S.C. § 2201. The standard for determining whether an "actual controversy" exists under the Declaratory Judgment Act is the same as the standard for determining whether there is an actual case or controversy within the meaning of Article III. Hendrix v. Poonai, 662 F.2d 719, 721 (11th Cir. 1981).

Quoting the Supreme Court, the Eleventh Circuit has previously explained the federal case or controversy requirement as follows:

> "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what

the law would be upon a hypothetical state of facts."

Provident Life & Accident Ins. Co. v. Transamerica-Occidental Life Ins. Co., 850 F.2d 1489, 1491 (11th Cir. 1988) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S. Ct. 461, 463-64 (1937)). As the Eleventh Circuit further observed in Provident Life,

> [c]ourts have found the case or controversy requirement lacking when the plaintiff has no interest in the case, when the defendant has no interest in the case, <u>when no conflict exists in the case, when there is no adverse claimant</u>, when there is no conflict in the case because of a defect in the parties and when there is no legal relationship between the parties.

Id. (emphasis added). "[T]here is no Art. III case or controversy when the parties desire 'precisely the same result.'" GTE Sylvania, Inc. v. Consumers Union of the United States, Inc., 445 U.S. 375, 383, 100 S. Ct. 1194, 1200 (1980) (citation omitted).

Plaintiffs' complaint initially asserted that the Alabama statute was subject to preclearance under Section 5. The complaint asked this court to declare that Section 5 preclearance was required and to order defendants to seek preclearance. However, plaintiffs' trial brief now specifically and emphatically argues that "[t]he position of the Department of Justice that [the Alabama statute] must be precleared . . . is wrong . . . ." In fact, plaintiffs' trial brief is—just like defendants' trial

brief—devoted to arguing why the Alabama statute does <u>not</u> need to be precleared. In their trial brief, plaintiffs "pray that this Court will enter an order finding that the [Alabama statute] do[es] not require preclearance." Moreover, plaintiffs' Proposed Findings of Fact and Conclusions of Law completely abandons any pretense that plaintiffs still want this court to declare that the Alabama statute is subject to preclearance. In their Proposed Findings of Fact and Conclusions of Law, plaintiffs only propose that we find that the Alabama statute does "not require preclearance."

Because at this pretrial stage the plaintiffs in this case have changed their position and now agree that defendants are not required to preclear the Alabama statute, no "sincere contest" exists between the particular parties in this case, and we must dismiss the complaint because there is no live case or controversy at this time. <u>Mississippi Gay Alliance v. Goudelock</u>, 536 F.2d 1073, 1077 n.2 (5th Cir. 1976); <u>see also</u> <u>GTE Sylvania</u>, 445 U.S. at 383, 100 S. Ct. at 1200; <u>Provident Life</u>, 850 F.2d at 1491. While this court would have jurisdiction to consider the preclearance issue <u>if</u> plaintiffs had not changed their legal position in this case (i.e., they had continued to argue that preclearance was required), their change of position (and explicit agreement with defendants regarding the preclearance issue)

leaves this court with no case or controversy to decide between these parties.[5]

Accordingly, we cannot issue what would amount to an advisory opinion, and we dismiss plaintiffs' complaint without prejudice.

**DISMISSED WITHOUT PREJUDICE.**

*Frank M. Hull*
FRANK M. HULL
UNITED STATES CIRCUIT JUDGE

---

[5] We recognize that plaintiffs' trial brief does state that if the three-judge court disagrees with plaintiffs' argument that the Alabama statute does not require preclearance, plaintiffs summarily pray that the court declare that preclearance of the Alabama statute is required and order the defendant Attorney General to seek preclearance. While plaintiffs make this request in passing, plaintiffs provide no legal argument whatsoever in their trial brief in support of any claim that preclearance is required under Section 5. Moreover, as discussed above, plaintiffs' Proposed Findings of Fact and Conclusions of Law also abandons the request for preclearance. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (noting that when a party fails to offer argument on an issue, it is abandoned); Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1325-26 (11th Cir. 2000) (failure to brief and argue an issue in proceedings before the district court is sufficient to find the issue has been abandoned); McMaster v. United States, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint; Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (noting that passing references to an argument, without elaboration, are insufficient to present the matter for adjudication on appeal).

While plaintiffs' lack of legal argument in support of preclearance being required is understandable (because plaintiffs agree with defendants that preclearance is not required), it also causes there to be no adverse claimants in this action, and thus no case or controversy between these particular parties at this juncture. In any event, plaintiffs' alternative request for preclearance, made in passing, is simply insufficient to convince this court that an actual "case" or "controversy" still exists between these parties. Plaintiffs' legal position on whether the statute requires preclearance is abundantly clear and precisely the same as that of defendants.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE


_____
VIRGINIA EMERSON HOPKINS
UNITED STATES DISTRICT JUDGE